UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: _____

JANE DOE NO. 60,

    Plaintiff,

vs.

G-STAR SCHOOL OF THE ARTS, INC., a
Florida not for profit corporation,

    Defendant.

## COMPLAINT

Plaintiff, JANE DOE NO. 60, brings this Complaint against Defendant, G-STAR SCHOOL OF THE ARTS, INC., a Florida not for profit corporation, and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.    This is an action arising from sexual abuse and harassment by a teacher on a student at G-STAR SCHOOL OF THE ARTS, in West Palm Beach, Florida.

2.    Plaintiff JANE DOE NO. 60 (hereafter "JANE DOE" OR "JANE") was at all relevant times a minor child and a resident of Palm Beach County, Florida. JANE DOE attended high school at G-STAR SCHOOL OF THE ARTS. This action is brought using a pseudonym to protect the identity of JANE DOE as this matter concerns the sexual abuse of a minor. Plaintiff fears further psychological damage if her identity as a victim of sexual abuse becomes publicly known. JANE DOE's identity is known, or will be made known to Defendant upon Defendant's appearance in this action.

HERMAN
LAW

3. Defendant G-STAR SCHOOL OF THE ARTS, INC. ("G-STAR"), is a Florida not for profit corporation, doing business in Palm Beach County. G-STAR is a charter school operating pursuant to Florida Statute §1002.33 and charter agreement with the School Board of Palm Beach County, Florida, as sponsor. G-STAR conducts operations as a high school, grades 9 – 12, known as the G-Star School of the Arts for Film, Animation and Performing Arts (the "School").

4. G-STAR controls the performance and day-to-day operations of the School.

5. At all relevant times, G-STAR employed Ismail Martinez ("Martinez") to perform work and services at the School. During the time that JANE DOE attended high school there, Martinez was a teacher and was promoted to Assistant Principal.

6. This Court has federal question subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1331 and 1367, and 20 U.S.C. §1681(a), and supplemental jurisdiction of the state law claim set forth herein pursuant to 28 U.S.C. §1367.

7. Venue of this action lies in this District pursuant to 28 U.S.C. §1391 as the Defendant resides in this District and the events and omissions giving rise to this action occurred in this District.

**SEXUAL ABUSE OF PLAINTIFF**

8. Martinez was JANE DOE's history teacher in 10th grade at the School. At that time, JANE DOE was 15 years old.

9. Throughout JANE DOE's sophomore year at the School, Martinez groomed JANE DOE to gain her trust and develop an inappropriate relationship with her. He did so by giving her special treatment and attention he did not give to other students.



10. On the first day of class, Martinez told JANE she was beautiful. He moved her to the front row of his class. Later in the school year, he pulled her outside of class and told her that he was distracted by her breasts, and asked her to wear something less revealing. On another occasion Martinez was humming a popular song with obscene lyrics and JANE hummed along with him. Mr. Martinez indicated to JANE DOE that he would like to perform on her the act described in the song, *i.e.*, perform oral sex on her.

11. Late in JANE DOE's sophomore year, Martinez asked JANE to stay for tutoring in his classroom. During the course of this tutoring session, he started to touch JANE's thigh and buttocks, and kissed her neck. They french kissed and Martinez pulled down JANE's shirt and bra, making her topless. He kissed her all over, including her nipples. He placed his hand on her vagina and placed her hand on his penis. Martinez made explicit statements of what he wanted to do to JANE DOE sexually.

12. After this encounter, JANE DOE felt that she was falling in love with Martinez. The next day, however, Martinez told her that he feared losing his job. He disclosed to her his concern about rumors circulating at that time that he was in a sexual relationship with a senior. To keep JANE silent, Martinez told her to wait for him, and that they could be together as a couple once she turned 18 years old. In response, JANE DOE promised to protect Martinez.

13. In JANE DOE's junior year at the School, she took Martinez's psychology class. Their inappropriate relationship continued. Martinez told JANE DOE, "I need you to wait for me", and "I can't do anything yet". JANE DOE gave him a disabled cell phone in class that had on it naked photos of JANE, which Martinez viewed approvingly in the classroom.

14. In JANE DOE's senior year, Martinez was promoted to Assistant Principal. He continued to groom JANE DOE, flattering her by telling her such things as she was beautiful,

although at times he would shun and ignore her. After graduating, JANE turned 18 years old but she did not hear from Martinez, despite his promise that they would be together as a couple. JANE DOE became severely depressed as a result of the acts and conduct of Martinez.

### ACTUAL NOTICE OF JANE DOE'S SEXUAL HARASSMENT

15. Upon information and belief, the CEO of G-STAR, Gregory Hauptner, and the School's Principal, Kimberly Collins, had actual notice that Martinez had engaged in sexual harassment of JANE. This notice was provided by, *inter alia*, at least four female students of the School who had knowledge of the inappropriate relationship of Martinez with JANE. Mr. Hauptner and Ms. Collins responded to this notice by calling JANE into the School's administrative office for a meeting late in JANE's 10th grade year. At this meeting, attended by Mr. Hauptner and Ms. Collins, JANE, then 15 years old, was asked to sign a document stating that she did not have an inappropriate relationship with a teacher. JANE signed this document, even though it was untrue, based on her agreement with Martinez that she would protect him and that they would be a couple when she turned 18 years of age.

16. Additionally, at all relevant times, upon information and belief, Mr. Hauptner was aware of information relating to Martinez's sexually inappropriate relationship with at least one other female student.

17. Upon information and belief, it was generally well known at the School by students and administration, including Mr. Hauptner and Ms. Collins, that Martinez engaged in excessive and inappropriate flirting and sexual harassment of female students. Among other things, he made sexually inappropriate comments to female students, which included telling them that he would have sexual fantasies about them. He openly groomed certain female students, including JANE, giving them special treatment and privileges.



## DELIBERATE INDIFFERENCE OF SCHOOL OFFICIALS
## IN RESPONSE TO ACTUAL NOTICE OF SEXUAL HARASSMENT

18. School Officials, including Mr. Hauptner and Ms. Collins, never informed JANE's mother about meeting with JANE to have her sign a statement disclaiming any inappropriate relationship with a teacher. Nor did they disclose to JANE's mother the reason for meeting with JANE. They never shared with JANE's mother the information they received regarding Martinez's sexual harassment and the inappropriate relationship between Martinez and JANE. JANE's mother was left unaware of any problem or issue involving JANE and Martinez.

19. School Officials, including Mr. Hauptner and Ms. Collins, failed to engage in any good faith investigation of Martinez's relationship with JANE. Upon information and belief, Martinez received no warning concerning his relationship with JANE, and no corrective measures were undertaken to protect JANE or prevent further sexual harassment.

20. School Officials, including Mr. Hauptner and Ms. Collins, failed to engage in corrective measures after receiving actual notice that Martinez had engaged in sexual harassment and an inappropriate sexual relationship with a female student at the School.

21. Subsequent to the foregoing instances of actual notice, Martinez engaged in sexual harassment and a sexually inappropriate relationship with JANE.

## COUNT I
### *NEGLIGENCE*

22. Plaintiffs repeat and re-allege paragraphs 1 through 21 above.

23. G-STAR was in the "special relationship" with JANE of school-student, such that it had a duty to protect JANE from foreseeable harms on school grounds and during school-related activities. In this regard, G-STAR was *in loco parentis* with the School's students, including JANE. At all material times, G-STAR owed a duty to protect the safety, care, well-



being and health of the minor JANE while she was under the care, custody or in the presence of the School. These duties encompassed the protection of JANE from harm by a School employee, and otherwise providing a safe environment for JANE while on School premises.

24. G-STAR was in the "special relationship" with Martinez of employer-employee, such that it had a duty to take steps to make sure that Martinez was safe before giving him access to students.

25. G-STAR knew or in the exercise of reasonable care should have known that Martinez was dangerous and a threat to the health, safety and welfare of female students, including JANE.

26. G-STAR had a duty in hiring, retaining and supervising Martinez to prevent foreseeable harm to students and prevent educator sexual misconduct.

27. G-STAR by and through its agents, servants, and employees, knew or should have known of Martinez's dangerous sexual propensities and that he was unfit to serve in any position within the School involving contact with female students.

28. Despite the G-STAR's knowledge of Martinez's dangerous sexual propensities as described above, G-STAR breached its duty to protect JANE DOE by allowing Martinez to serve as a teacher and administrator, giving him access to female students despite knowing of his dangerous sexual propensities, and by failing to institute any supervision of Martinez's contact with students.

29. G-STAR breached its duties by failing to protect the minor JANE from sexual assault, harassment and lewd and lascivious acts committed upon JANE while she was present on school grounds, during school hours, or during school-related activities.



Page 7

30. At all relevant times, G-STAR breached its duty in hiring, retaining and supervising Martinez, which placed Martinez in a position to sexually harass and assault JANE.

31. As a direct and proximate result of G-STAR's breach of its duty relating to the hiring, retention and supervision of Martinez, whom the G-STAR knew posed a foreseeable risk of sexual misconduct with female students, JANE DOE was sexually abused by Martinez while attending the School.

32. Given the actual and constructive knowledge of G-STAR concerning the dangerous propensities of Martinez, the sexual assault of JANE was reasonably foreseeable to G-STAR.

33. With such actual and constructive knowledge, G-STAR hired and/or retained Martinez, and failed to adequately supervise his acts and conduct with female students, needlessly endangering JANE DOE's health and safety.

34. Because G-STAR was acting *in loco parentis*, G-STAR had a duty to warn JANE DOE's parent(s) that Martinez posed a risk of harm to JANE, and to otherwise inform her parent(s) of relevant information in their possession or control concerning the sexual misconduct of Martinez.

35. G-STAR breached its duty in failing to warn JANE DOE'S parent(s) about Martinez.

36. At all relevant times, G-STAR created an environment which fostered educator sexual misconduct with the children it had a duty to protect, including JANE.

37. At all relevant times, G-STAR had inadequate policies and procedures to protect children they were entrusted to care for and protect, including JANE.



38. At all relevant times, G-STAR failed to adequately train teachers and staff in protecting children from educator sexual misconduct.

39. G-STAR's negligent acts and omissions reflect a recklessness and conscious disregard for the safety and well being of female students, particularly JANE.

40. As a direct and proximate result of the negligence of G-STAR, JANE suffered severe and permanent psychological, emotional and physical injuries, shame, humiliation and the inability to lead a normal life.

WHEREFORE, Plaintiff JANE DOE demands judgment against Defendant G-STAR for compensatory damages, costs of suit, punitive damages, and such other and further relief as is just and proper.

## COUNT II
### VIOLATION OF TITLE IX, EDUCATION AMENDMENTS OF 1972 - 20 U.S.C. §1681 ET SEQ.

41. Plaintiffs repeat and re-allege the allegations set forth in paragraphs 1 through 21 above.

42. At all relevant times, G-STAR received federal financial assistance.

43. JANE DOE had a right to not be subject to sexual discrimination, harassment or abuse while she attended the School.

44. G-STAR had actual notice that Martinez was sexually harassing JANE DOE. G-STAR also had actual notice that Martinez was sexually harassing another female student of the School. The foregoing actual notice informed the School that Martinez presented a danger of sexual misconduct to female students.



45. The student reports or complaints known to CEO Hauptner and Principal Collins alerted and informed G-STAR, and its agents and representatives, to Martinez's propensity to commit sexual abuse and misconduct with JANE DOE and other female students.

46. CEO Hauptner and Principal Collins had authority to address the acts of sexual harassment and abuse by Martinez and institute corrective measures.

47. Upon information and belief, the decision of CEO Hauptner and Principal Collins to allow Martinez unfettered contact with JANE subsequent to the above-described notice, without instituting any corrective measures, were official decisions to ignore the danger of sexual abuse to the children in their care. Indeed, the effort by these School Officials to have JANE sign a statement disclaiming an inappropriate relationship with a teacher, while concealing from her mother the information they received leading to this concern, reflects a consciousness of guilt.

48. The decisions by CEO Hauptner and Principal Collins to ignore reports that Martinez had engaged in sexual harassment and sexually inappropriate relationships with female students reflects the School's deliberate indifference to sexual harassment and assault.

49. In response to actual notice that Martinez had engaged in sexual harassment or sexually inappropriate conduct with one or more female students, School officials could have instituted any of a number of corrective measures that would have prevented any sexual harassment or sexual assaults of JANE, including without limitation, (i) terminating Martinez; (ii) strictly supervising and monitoring Martinez to ensure that he did not have inappropriate contact with JANE and other female students; (iii) adequately warning Martinez and informing him of severe consequences if he were to engage in any sexual harassment of female students; (iv) implementing policies to prevent educator sexual misconduct; (v) implement policies to

prevent educator sexual misconduct; (vi) warning JANE's parent(s) that Martinez posed a danger to JANE of sexual harassment or sexual assault; and/or (vii) implementing any such other action reasonably intended or designed to protect JANE from sexual harassment or sexual assault by Martinez at the School.

50. Despite receipt of actual notice, CEO Hauptner, Principal Collins, and the School's agents and representatives, acted with deliberate indifference in failing to (i) terminate Martinez; (ii) warn Martinez; (iii) supervise and monitor Martinez's contacts with JANE; (iv) implement policies to prevent educator sexual misconduct; (v) implement training to teachers and staff to prevent educator sexual misconduct; (vi) warning JANE's parent(s) that Martinez posed a danger to JANE of sexual harassment or sexual assault; and/or (vii) implement other action to protect JANE and prevent Martinez from sexually harassing female students.

51. As a result of this gross failure to act, JANE was sexually harassed and sexually assaulted by Martinez.

52. JANE has suffered damages as a result of Defendant G-STAR's deliberate indifference in response to actual notice, including severe and permanent physical and psychological injuries, shame, humiliation, and inability to enjoy a normal life.

WHEREFORE, Plaintiffs demand compensatory damages, attorneys' fees and costs pursuant to 42 U.S.C. §1988, and such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial in this action.



Dated: March 21, 2016

Respectfully submitted,
HERMAN LAW
3351 NW Boca Raton Boulevard
Boca Raton, FL 33431
Tel:  305-931-2200
Fax:  305-931-0877

By:  /s/ Stuart S. Mermelstein
Jeff Herman
Florida Bar No. 521647
jherman@hermanlaw.com
Stuart S. Mermelstein
Florida Bar No. 947245
smermelstein@hermanlaw.com